UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K&D EXPRESS INC,

    Plaintiff,

v.

UNITED STATES OF
AMERICA, DEPARTMENT OF
AGRICULTURE, FOOD AND
NUTRITION SERVICE,

    Defendant.
                             /

Case No. 2:19-cv-11465

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PLAINTIFF'S
EX-PARTE EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION [6]**

On May 17, 2019, Plaintiff K&D Express, Inc. ("Bellagio")[1] filed a complaint against the United States Department of Agriculture ("USDA") for actions taken by the USDA's Food and Nutrition Service ("FNS") regarding Plaintiff's qualification for the Supplemental Nutrition Assistance Program ("SNAP"). ECF 1. On June 13, 2019, Plaintiff filed a motion for preliminary injunction and for a temporary restraining order. ECF 6.[2] The Court has reviewed the briefs and finds that a hearing is

---

[1] Plaintiff's complaint states that K&D Express, Inc. is doing business as Bellagio Liquor Shoppe. ECF 1, PgID 1.

[2] Bellagio represents that "Defendant has not answered the complaint." ECF 6, PgID 44. The Certificate of Service, ECF 5, shows that Bellagio failed to comply with the rules for service of a United States agency, *see* Fed. R. Civ. P. 4(i)(2) (explaining that, to serve a United States agency, a party must serve the United States) and Fed. R. Civ. P. 4(i)(1) (describing how to serve the United States).

1

unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will deny the motion.

## BACKGROUND

I. Statutory and Regulatory Framework

The Food and Nutrition Act of 2008, the Food Stamp Act, and their related regulations provide the legal background for Bellagio's complaint. Stores may apply to be authorized SNAP retailers, which allows them to receive food stamps as payment. 7 C.F.R. § 278.1(a). FNS must withdraw a retail store's authorization as a SNAP retailer if the store "fails to meet the requirements for eligibility under Criterion A or B." 7 C.F.R. § 278.1(l)(1)(iii).

Criterion A requires a store to "[o]ffer for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods as defined in [the regulations], including perishable foods in at least three of the categories." 7 C.F.R. § 278.1(b)(1)(i)(A); *see also* 7 C.F.R. § 278.1(b)(1)(ii)(A)–(C). Criterion B requires a store to "have more than 50 percent of [its] total gross retail sales . . . in staple foods." 7 C.F.R. § 278.1(b)(1)(i)(A); *see also* 7 C.F.R. § 278.1(b)(1)(iii).

Even if a store fails to meet Criterion A or Criterion B, it may still retain its SNAP authorization. The FNS must "consider whether the applicant firm is located in an area with significantly limited access to food." 7 C.F.R. § 278.1(b)(6). The FNS may consider, but is not limited to, certain enumerated factors when deciding whether a store qualifies for the "Need for Access" exception. *Id.*

Prior to making a reauthorization decision, a specified government agent must "visit[] the store . . . for the purpose of determining whether the store . . . should be

approved or reauthorized." 7 U.S.C. § 2018(a)(1)(D). If a store's reauthorization application is denied for failing to meet Criterion A or Criterion B it is not "eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial." 7 C.F.R. § 278.1(k)(2). A denial of a store's reauthorization application is "subject to administrative review." 7 C.F.R. § 278.1(p); *see also* 7 U.S.C. § 2023. A store may seek judicial review of the agency's final determination. 7 U.S.C. § 2023(a)(13).

II.   Factual Background

On October 23, 2018, Bellagio applied for reauthorization. ECF 6, PgID 47 (administrative decision recounting facts). On November 28, 2018,[3] an FNS officer visited Bellagio and "conducted an on-site visit to [the] store to determine" Bellagio's eligibility to participate as an authorized SNAP retailer. ECF 1, PgID 3. On February 13, 2019, the FNS withdrew Bellagio's authorization as a SNAP retailer because it "ha[d] not demonstrated that it meets either Criterion A or Criterion B." *Id.* at 10. On February 25, 2019, Bellagio submitted a request for review of the denial of reauthorization. *Id.* at 13–15. Bellagio alleges that one month later it provided the USDA with more than one hundred pages of invoices for additional food items. *Id.* at 3. On April 24, 2019, the USDA issued its final decision upholding the denial of Bellagio's reauthorization. *Id.* at 3, 17–26.

---

[3] The complaint varies between allegations that the store visit occurred on November 18 or November 28. ECF 1, PgID 3. But the USDA's letter denying reauthorization identified the store visit date as November 28, 2018. *See id.* at 10.

Bellagio filed its complaint and sought judicial review of the USDA's final agency action because Bellagio alleges that the USDA violated due process.[4] ECF 1, PgID 5–6.

## LEGAL STANDARD

I. <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

A federal district court "may issue a temporary restraining order without written or oral notice to the adverse party" only if two conditions are met: (1) specific facts in a verified complaint "show that immediate and irreparable injury, loss, or damage will result to the movant" before a hearing can be held; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A federal district court "may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

The Court balances four factors when deciding whether to issue a temporary restraining order or grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Democratic Party v. Donald J. Trump for President, Inc.*, No. 16-4268, 2016 WL 6608962, at *1 (6th Cir. Nov. 6, 2016) (quoting *Ohio Republican*

---

[4] Bellagio's complaint included counts for "Review of Final Agency Action of USDA" and "Injunctive Relief." *See* ECF 1, PgID 5, 7. Neither is an independent cause of action. Rather, the Court may review the agency's final action, and injunctive relief is a remedy for certain types of harms.

4

*Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008)). The moving party carries the burden of persuasion. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

II. <u>Standard of Review of Agency Action under the Food Stamp Act</u>

A district court reviews the USDA's action by "a trial de novo" and must "determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The Court "make[s] its own findings based upon the preponderance of the evidence and [does] not limit itself to matters considered in the administrative proceeding." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991) (citation omitted). The store carries the burden of "establish[ing] the invalidity of the administrative action by a preponderance of the evidence." *Id.* (citation omitted).

**DISCUSSION**

I. <u>Temporary Restraining Order</u>

The Court will deny Bellagio's motion for a temporary restraining order. Issuance of a temporary restraining order without notice is appropriate only if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Bellagio has not shown an immediate and irreparable injury by "specific facts in an affidavit or verified complaint." *Id.* The motion for a temporary restraining order is procedurally defective and will therefore be denied.

II. <u>Preliminary Injunction</u>

The Court will also deny Bellagio's request for a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

5

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 550 U.S. at 20. The Court will address each factor in turn.

*A. Likelihood of Success on the Merits.*

Bellagio has failed to show a likelihood of success on the merits of any of its arguments. First, Bellagio argues that the Court must "reach its own factual and legal conclusion whether a single visit should determine whether a certain store carries sufficient food inventory in the relevant areas." ECF 6, PgID 40. But Congress statutorily required only that the agency visit the store before reauthorization, and it did not require more than one visit. *See* 7 U.S.C. § 2018(a)(1)(D). Thus, as a matter of law, a single visit can determine eligibility for reauthorization.

Second, Bellagio contends that the agency acted arbitrarily and capriciously when it "failed to consider . . . [that] [s]mall stores are convenience stores and not supermarkets" and thus limited in how much they can keep in stock. ECF 6, PgID 40. Bellagio essentially challenges the agency's decision to not make an exception based on the size of the store. But Congress itself defined a "retail food store" that could receive food stamps as payment as one that met Criterion A and Criterion B. *See* 7 U.S.C. § 2012(o)(1). Agency action that applies the non-discretionary provision of a statute is not arbitrary and capricious.

Third, Bellagio claims that the agency acted arbitrarily and capriciously by determining that Bellagio did not qualify for the Need for Access exception. ECF 6,

6

PgID 40. But Plaintiff did not provide facts showing that it "is located in an area with significantly limited access to food." 7 C.F.R. § 278.1(b)(6). Bellagio has not shown by a preponderance of the evidence that it qualified for the Need for Access exception or that the agency acted arbitrarily and capriciously in not reauthorizing Bellagio under the exception.

Fourth, Bellagio argues that it has a "property interest in maintaining the food stamps authorization" and that Criterion B's requirement and enforcement are "arbitrary and capricious especially when based on a single visit." ECF 6, PgID 41. But Congress provided that at least a single visit was required prior to declining reauthorization and did not require more than one visit. *See* 7 U.S.C. § 2018(a)(1)(D). Furthermore, Plaintiff did not provide evidence of the hundreds of pages of invoices it alleges it provided to the agency during the pendency of its administrative review. *See* ECF 1, PgID 3–4 (referencing invoices and receipts allegedly provided to, and ignored by, the USDA).

Fifth, Bellagio makes what appears to be an equal protection claim pursuant to the Fourteenth Amendment. *See* ECF 6, PgID 41 (claiming that Criterion B "discriminates against small retainers [sic] and favors big chain stores"); *see also id.* at 42 (citing Supreme Court cases addressing the Fourteenth Amendment's Equal Protection Clause). Bellagio then argues that the government does not have an interest sufficient to satisfy intermediate scrutiny for equal protection claims. *Id.* at 41–42; *see also id.* at 40 (asserting that the Court must decide "whether the government has a legitimate or an important interest in requiring small

7

neighborhood stores to carry the type [of] food carried by supermarkets").[5] But the Fourteenth Amendment's Equal Protection Clause "applies only to the states." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Moreover, Bellagio is not complaining that similarly-situated entities were treated differently, but, rather, that differently-situated entities were treated similarly.

Sixth, Bellagio maintains that "[d]isqualifying [it] from participating in the food stamp program is a deprivation of its property rights." ECF 6, PgID 43. Bellagio cites *TRM, Inc. v. United States* in support. *Id.* But the court in *TRM, Inc.* expressly declined to "decide whether continued participation in the food stamp program is a cognizable property right." 52 F.3d 941, 943 n.8 (11th Cir. 1995). Bellagio has not expanded on why it believes that the USDA's decision to withdraw its authorization because Bellagio failed to comply with the requirements of SNAP-retailer authorization violates due process. The record does not provide evidence that a due process violation occurred—especially when considering that Bellagio appealed the initial determination and received an agency review of the initial denial.

In sum, Bellagio failed to show by a preponderance of evidence a likelihood of success on the merits on any of its complaint's legal bases for relief.

---

[5] Congress's stated interest was to permit "low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011. To accomplish that goal, Congress established a statutory scheme for the authorization of retail food stores to serve as SNAP retailers. *See* 7 U.S.C. § 2018. Congress—and the USDA through its regulations—does not require small neighborhood stores to meet specific criteria *unless* the retailer "desire[s] . . . to accept and redeem benefits under" SNAP. 7 U.S.C. 2018(a)(1)(A).

*B. Irreparable Injury to Movant.*

Bellagio has not shown it will suffer irreparable injury. Bellagio alleges that, since the USDA removed its designation as a SNAP-approved retailer, its "sales have already dropped by half," the store's owner is struggling to support his family and widowed mother, and, "[i]f the disqualification continues, immediate and irreparable injury, loss, or damage will result to [Bellagio]," which may have to "go out of business and close the store." ECF 6, PgID 41. Bellagio further argues that withholding the authorization endangers the store's owner's ability to earn a livelihood. *Id.* at 43.

But Bellagio's conclusory allegations are not evidence. It has failed to show by a preponderance of the evidence that it will suffer immediate and irreparable harm absent a preliminary injunction.

*C. Equitable Considerations.*

Finally, equitable considerations do not outweigh the other preliminary-injunction factors. The Court must consider whether the balance of equities tips in Bellagio's favor and whether an injunction would serve the public interest. *See Winter*, 550 U.S. at 20. Bellagio does not argue that it satisfied Criterion A or Criterion B. Rather, it alleges that the requirements are too onerous for a small convenience store and that it should qualify for the Need for Access exception. *See generally* ECF 6.

Bellagio has not presented any argument (separate from his claims about harm to him) to show that the balance of equities weighs in his favor. Bellagio does argue that it is located "inside a poor neighborhood" and "[a]lmost all the customers have

9

food stamps." ECF 6, PgID 41. In its request for administrative review, Bellagio asserted that the closest supermarket to it is "approximately half a mile away" and that "[a] senior citizen or a pregnant woman will be unable to walk the distance to the larger stores if they don't drive." ECF 1, PgID 15. Although the contention would tend to show that an injunction would serve the public interest, there is no evidence in the record that other SNAP-authorized retailers are not sufficiently nearby.

Upon consideration of the above factors, the Court determines that Bellagio has failed to show its entitlement to a preliminary injunction. Bellagio's motion will be denied.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's ex-parte emergency motion for temporary restraining order and preliminary injunction [6] is **DENIED**.

**SO ORDERED**.

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: June 20, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2019, by electronic and/or ordinary mail.

s/ David P. Parker<br>
Case Manager